UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- X
                                     :

QUN TIAN, CHUNYAN DONG, KAI
LU, HERRERA GRANO JAIRO, on
behalf of themselves and all others
similarly situated, ZHENHUA LIN, JIA
XIN GAO, WEI MIN CHEN, LI SHENG
XIE, ZHI MIN XIE, MIN YANG,
GUANG YU LIN, ANDY XU, QICHEN
LI, MING YUAN WANG, ZHIMIN
ZHAN, ZHONG QIANG CHEN, JIAXIN
CHEN, JIANSHU LIN, LUIS E.
VILLANUEVA, VAZQUEZ GARCIA
JUAN CARLOS, MENDEZ VAZQUEZ
GUSTAVO, XIAOYUN YANG,
GUANG SONG WU, JESUS LAZERO
FLORES, YING JIE WANG, PINGWEN
LIN, ZHAOYI YU,

                Plaintiffs,

      -against-

TOP FOOD TRADING INC., DONG
FENG TRUCKING INC., XING DA
CORPORATION ZHENHAO TRADING
INC., JIAN XU, XUEXIANG WU,
LANFANG WU, QIAO CHEN,
SONGDE CHEN, HUISU CHEN, JOHN
DOE 1-5, JANE DOE 1-5, COMPANY
ABC 1-5,

             Defendants.

---------------------------------------- X

**REPORT AND RECOMMENDATION**

22 Civ. 00345 (EK) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Qun Tian ("Tian" or "Plaintiff"), on behalf of himself and others similarly

situated (together "Plaintiffs") brings this action against Defendants Top Foods Trading Inc.

("Top Foods"), Dong Feng Trucking Inc. ("Dong Feng"), Xing Da Corporation ("Xing Da"),

Zhenhao Trading Inc. ("Zhenhao Trading") (collectively "Corporate Defendants"), Jian Xu, Xuexiang Wu, Lanfang Wu, Qiao Chen, Songde Chen, Huisu Chen, (collectively "Individual Defendants"), Company ABC 1-5, John Doe 1-5 and Jane Doe 1-5 (altogether "Defendants"). Tian alleges that Defendants violated the wage-and-hour provisions of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 et seq., and of the New York Labor Law ("NYLL").  Fourth Amended Compl., ECF No. 53 ¶¶ 5-6.  The appearing Defendants move to dismiss Plaintiffs' fourth amended complaint ("Fourth Amended Complaint" or "FAC") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  See Motion to Dismiss, ECF No. 64.  Defendants' motion to dismiss ("Motion to Dismiss") is before this Court on referral from the Honorable Eric R. Komitee.  For the reasons stated below, this Court respectfully recommends:

1.  that Defendants' motion to dismiss be denied as to Counts I, II and V of Plaintiffs' Fourth Amended Complaint; and

2.  that Defendants' motion to dismiss be granted with leave to replead as to Counts III and IV of Plaintiffs' Fourth Amended Complaint.

## I.    BACKGROUND

The following facts are derived from the FAC and the Motion to Dismiss; they are accepted as true only for purposes of this report and recommendation.  Facts relating to the relevant procedural history of the case are derived from the docket.

### A.  Factual Background

Tian is an individual residing in the State of New York.  FAC, ECF No. 53 ¶ 7.

---

[1] Corporate Defendants Dong Feng Trucking Inc. and Top Food Trading Inc. have failed to appear or otherwise defend this action.

Defendants Top Food, Dong Feng, Xing Da and Zhenhao Trading operate under the name Ding

Hao[2] and have the same principal place of business at 72-02 51st Avenue, Woodside, NY 11377.

Id. ¶¶ 9-13.  Individual Defendants are managers, officers, members and/or shareholders of Ding

Hao.  Id. ¶ 26.

Tian was employed as a driver by Defendants from June 1, 2016 to November 30, 2019.

Id. ¶ 54.  From June 1, 2016 to November 30, 2017 (Period 1), Tian worked six (6) days per

week and at least eighty (80) hours per week.  Id. ¶ 55.  From December 1, 2017 to November

30, 2019 (Period 2), Tian worked (6) days per week and at least seventy (70) hours per week.  Id.

Tian's weekly salary was gradually increased from $850 to $900, and he was paid on a biweekly

basis.  Id. ¶ 56.  According to the FAC, during Plaintiff's employment, he was generally not

given any time off for meals and he performed manual work for Defendants.  Id. ¶¶ 135-36.

According to the FAC, Defendants willfully failed to pay Plaintiff overtime pay for hours

worked beyond forty (40) hours in a workweek, refused to provide Plaintiff written notice of his

regular rate of pay or overtime rate of pay, in violation of NYLL § 195.1, and failed to provide

Plaintiff with accurate paystubs and W-2s.  Id. ¶¶ 140-43.

### B.  Procedural Background

On January 20, 2022, Tian brought the initial complaint alleging the above-noted wage-

and-hour violations under the FLSA and the NYLL on behalf of himself and others similarly

situated.  See ECF No. 1.  Tian then filed an amended complaint to add the other named

Plaintiffs.  See ECF No. 10.  On or about August 31, 2022, Plaintiffs filed their second amended

---

[2] Plaintiff's FAC states that "Defendants operated a wholesale business publicly known as 'Ding Hao.'" FAC ¶ 8.  Although, as noted by Defendants, "Plaintiffs refer to [Corporate Defendants] collectively as "Ding Hao" without explaining their basis for using this term to refer to the four separate entities," ECF No. 64-1 at 8 n.3, this Court will collectively refer to Corporate Defendants as "Ding Hao" for ease of reference throughout this report and recommendation.

complaint, which added Defendants Dong Feng, Xing Da, Zhenhao Trading, Jian Xu, Xuexing Wu, Lanfang Wu and Qiao Chen, and added a cause of action under the New York Debtor Creditor Law ("DCL").  See ECF Nos. 14 and 64 at 1-2.  Plaintiffs filed a third amended complaint, which added Songde Chen and Huisu Chen as Defendants.  See ECF Nos. 25 and 64 at 1-2.  See ECF Nos. 25 and 64 at 1-2.  On April 10, 2023, Plaintiffs filed their FAC, which amended the pleadings by changing their DCL claim to a Uniform Voidable Transactions Act ("UVTA") claim.  See ECF Nos. 53 and 64 at 1-2.

On August 21, 2023, Defendants filed the instant Motion to Dismiss the FAC under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  See ECF No. 64. Defendants argue that (1) Plaintiffs' FLSA ("Count I") and NYLL claims ("Count II") should be dismissed as against all Individual Defendants because Plaintiffs failed to sufficiently plead that any of the Individual Defendants were their employers; (2) Plaintiffs' Wage Theft Prevention Act ("WTPA") claims ("Count III") should be dismissed because WTPA are technical statutory violations that do not constitute an actual injury sufficient to grant a plaintiff standing in federal court; (3) Plaintiffs' NYLL pay frequency claims ("Count IV") should be dismissed because the FAC does not show that Plaintiffs are "manual workers" entitled to receive weekly pay under the NYLL; and (4) Plaintiffs' DCL claims ("Count V") should be dismissed because Plaintiffs fail to provide Defendants with fair notice of the basis of their claim by omitting particularized facts such as timing, amount or which particular Defendants are being referenced.  Id. at 3-14. Plaintiffs filed a memorandum in opposition to Defendants' Motion to Dismiss ("Memorandum in Opposition").  See ECF No. 66.  Defendants filed a reply in support of the Motion to Dismiss ("Reply"), along with written affirmations of Defendants' counsel Bruce Menken, William Li and Yat T. Man.  See ECF Nos. 67 and 67-1, 2, 3.  Plaintiffs filed a letter addressed to the

4

District Court asking that the Court disregard Defendants' counsel's affirmations on the basis that the declarations should have been attached to the Motion to Dismiss rather than to the Reply. See ECF No. 68.  Defendants filed a letter in opposition to Plaintiffs' October 3rd letter stating that "Defendants submitted these declarations in response to unsubstantiated assertions raised in the Opposition Brief against an ambiguous and unidentified attorney for one of the Defendants. As such, based upon the most basic principle of motion practice, it is proper for Defendants to annex these declarations in their Reply in order to refute Plaintiffs' assertion." Id. at 1.  The Court has considered all the submissions on the Motion.

For the reasons set forth below, this Court respectfully recommends that Defendants' Motion to Dismiss be denied as to Counts I, II and V of Plaintiffs' FAC but that the Motion to Dismiss be granted with leave to replead as to Counts III and IV of the FAC.

## II.    DISCUSSION

### A.  Standard Of Review

On a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party.  See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 113 (2d Cir. 2013). The complaint's allegations "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Only "a plausible claim for relief survives a motion to dismiss."  LaFaro v. N.Y. Cardiothoracic Grp., 570 F.3d 471, 476 (2d Cir. 2009).  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  Twombly, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility[,] [i.e.] the plaintiff pleads factual content

5

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcoft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Counts I And II Of Plaintiffs' Fourth Amended Complaint Should Not Be Dismissed Against All Individual Defendants

In their FAC, Plaintiffs allege that Defendants violated the FLSA and the NYLL's overtime wage provisions. See FAC ¶¶ 158-69. Defendants argue that Plaintiffs "failed to plead sufficient, particularized facts which might support a claim that any of the individually named Defendants were their employers" under the FLSA and NYLL and that, as a result, Plaintiffs are not protected by the FLSA and the NYLL's overtime wage provisions. See Motion to Dismiss, ECF No. 64 at 4. According to Defendants, Plaintiffs' FAC does not include factual allegations as to how Individual Defendants "participated in the operations of Plaintiffs' corporate employers in a way that affected workplace conditions and operations, personnel, or compensation" and which demonstrate that Defendants were Plaintiffs' employers. Id. at 5. "Absent are any allegations regarding who each Plaintiff's supervisor or manager was, who hired each Plaintiff, who set each Plaintiff's hours, etc." Id. Defendants also argue that Plaintiffs' allegations did not specifically demonstrate which of the Individual Defendants exercised control over Plaintiffs' work. Id. at 6-8. In their Memorandum in Opposition, Plaintiffs claim that they included sufficient factual allegations in their pleadings to demonstrate each Individual Defendant's employer status. ECF No. 66 at 5. Plaintiffs add that "[n]o law requires Plaintiffs, for the purposes of a pleading, explain 'who each Plaintiff's supervisor or manager was, who hired each Plaintiff, who set each Plaintiff's hours, etc.,' as suggested by Defendants." Id.

Having reviewed the FAC, the Court finds that Plaintiffs sufficiently alleged that Individual Defendants were Plaintiffs' employers under the FLSA and the NYLL; whether the claims alleged will be substantiated with sufficient evidence on dispositive motion practice or at

trial is a separate question for another day.

The FLSA describes an "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee."  29 U.S.C. § 203(d).  The NYLL defines an "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer."  NYLL §§ 190(3), 651(6); see Irizzarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013)).  Second Circuit courts have established that the NYLL's definitions of "employee" and "employer" are analogous to those under the FLSA.  See Singh v. Mowla, 19 Civ. 4687 (PKC) (LB), 2022 WL 17820099, at *8 n.8 (E.D.N.Y. Sept. 30, 2022) (citing Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)).

"Under the FLSA, the question of whether an employee-employer relationship exists is one of 'economic reality.'"  Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009) (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)).  To determine whether an employee-employer relationship exists under the FLSA, Second Circuit courts have considered: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business."  Id. at 306 (citing Godoy v. Restaurant Opportunity Ctr. of N.Y., Inc., 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009)).  "Although slightly different than the FLSA inquiry, the standard for determining a worker's status as an employee or independent contractor under [the NYLL] is similar, and accounts for some of the same factors.  Instead of focusing on the economic reality of the situation, New York law focuses on the degree of control exercised by the purported

employer over the results produced or the means used to achieve the results." Velu, 666 F. Supp. 2d at 306-07. "In determining whether a person is an 'employer' for purposes of NYLL . . courts consider whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" In re Stage Presence Inc., 555 B.R. 166, 179 (Bankr. S.D.N.Y. 2016) (citing Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999)). In order to assess control under the NYLL, Second Circuit courts have also looked at "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." Velu, 666 F. Supp. 2d at 307 (internal citations & quotation marks omitted).

Defendants cite to Irizzarry in which the Second Circuit found that "'[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees.'" ECF No. 64 at 4 (citing Irizzarry, 722 F.3d at 111). Instead, the Second Circuit requires "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." Id. (citing Irizzarry, 722 F.3d 99 at 109). Plaintiffs argue that Irizzarry did not "require Plaintiffs to set forth the level of details suggested by Defendants." ECF No. 66 at 5. This Court agrees.

In Irizzarry, the Second Circuit looked at whether the defendant could be considered the plaintiff's employer under the FLSA. The court reviewed the defendant's overall authority, including whether the defendant had decisional authority as to how the company was run, the defendant's influence in specific stores, whether the defendant satisfied the Carter factors and the

8

totality of the circumstances.  See Irizzarry, 722 F.3d 99 at 111-17.  The court found that the defendant was an employer under the FLSA, because "[a]lthough there is no evidence that [the defendant] was responsible for the FLSA violations—or that he ever directly managed or otherwise interacted with the plaintiffs in this case—Catsimatidis satisfied two of the Carter factors . . . : the hiring of managerial employees, and overall financial control of the company." Id. at 116.  "[T]he hiring and firing of individuals who were in charge of [the plaintiff employees] is a strong indication of control."  Id. at 114 (internal citations & quotation marks omitted).

In their FAC, Plaintiffs allege that Individual Defendants "were involved in the operation and management of Ding Hao, and had operational control."  FAC ¶ 29.  Individual Defendants also "supervised the workers, including Plaintiffs, during their employment.  They were responsible for, among other things, hiring and firing, overlooking employees' work schedules, compensation, and Defendants' pay and recordkeeping practices."  Id. ¶ 30.  Individual Defendants "oversaw the overall operation of Ding Hao, including without limitation its time keeping practices, payroll practices, employee compensation, making decisions on employment related issues such as hiring, firing, and employee discipline, and maintaining employment records."  Id. ¶ 31.  As to the Individual Defendants, the FAC satisfies the Carter factors in that it alleges that they had the power to hire and fire Plaintiffs, supervised and controlled Plaintiffs' work schedules, reviewed Plaintiffs' schedules and compensation, as well as Corporate Defendants' pay and record practices.  FAC ¶¶ 29-31.  This Court finds that Plaintiffs' FAC sufficiently pleaded that Individual Defendants had decisional authority over Ding Hao.  See Irizzarry, 722 F.3d 99 at 112.

On a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations

in the complaint as true and must draw all reasonable inferences in favor of the non-moving party.  See Lundy, 711 F.3d at 113.  The Court finds that Plaintiffs' factual allegations sufficiently allege that Individual Defendants were Plaintiffs' employers within the meaning of the FLSA.  Because Plaintiffs allege an employer-employee relationship under the FLSA and given the close overlap of the NYLL and FLSA employer-employee tests, Plaintiffs have sufficiently alleged that Individual Defendants are employers within the meaning of the NYLL.

### C.  Count III Of Plaintiffs' Fourth Amended Complaint Should Be Dismissed With Leave To Replead

Plaintiffs' FAC alleges that "Defendants willfully violated Plaintiffs' and the Rule 23 Class members' rights by failing to provide each of them with the proper notices of wage rates as required by the Wage Theft Prevention Act [WTPA]."  FAC ¶ 172.  Defendants claim that Plaintiffs' WTPA should be dismissed for lack of standing because "alleged violations of the WTPA are technical statutory violations that do not constitute an actual injury sufficient to grant a plaintiff standing in federal Court."  ECF No. 64 at 8.  In response, Plaintiffs cite to several Second Circuit cases in which the court found standing for WTPA claims in favor of the plaintiffs.  See ECF No. 66 at 11-12.  Plaintiffs cite to Imbarrato, in which the district court dismissed the defendants' argument that the plaintiffs lacked standing under the WTPA for failure to allege an injury-in-fact.  Imbarrato v. Banta Mgmt. Servs., No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at *5-9 (S.D.N.Y. Mar. 20, 2020); see ECF No. 66 at 12-14.  In their Reply, Defendants claim that Imbarrato was abrogated by TransUnion LLC v. Ramirez in which the U.S. Supreme Court held that a plaintiff must demonstrate an actual and concrete injury resulting from the NYLL's wage notice and statement requirement in order to have standing in federal court.  See Reply, ECF No. 67 at 5; see TransUnion LLC v. Ramirez, 594 U.S. 413, 414 (2021).  Defendants also cite to Ramirez, in which the district court noted that, since TransUnion, Second

Circuit courts have "found no standing in cases . . . where Plaintiffs have not established any injury traceable to violation of the wage notice and statement requirements."  Ramirez v. Urion Constr. LLC, No. 22 Civ. 3342 (LGS), at *8 (S.D.N.Y. May 19, 2023); see Reply, ECF No. 67 at 6.  Here, Defendants argue that Plaintiffs' argument that the Court "should find that failure to provide accurate wage statements necessarily entails concrete harm . . . is impermissible[.]"  ECF No. 67 at 7.

"At all stages of litigation, 'the party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing.'"  Calcano v. Swarovski North America Ltd., 36 F.4th 68, 74 (2d Cir. 2022) (citing Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016)); see Mays v. Wal-Mart Stores, Inc., 804 Fed. App'x. 641, 643 (9th Cir. 2020) ("A plaintiff cannot proceed in federal court absent Article III standing and 'must demonstrate standing for each claim [s]he seeks to press.'") (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342, 352 (2006)).  "'[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'"  Calcano, 36 F.4th at 74 (citing TransUnion, 594 U.S. at 423).

The Ninth Circuit has helpfully considered standing in the context of state law rights-related claims arising from employees' rights to receive wage-and-hour paperwork.  See Magadia v. Wal-Mart Assoc., Inc., 999 F.3d 668, 679 (9th Cir. 2021); Patel v. Facebook, Inc., 932 F.3d 1264, 1270 (9th Cir. 2019).  The Ninth Circuit's two-step test looks at "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests."  Id.

Applying this two-step approach in Mays, the Ninth Circuit first looked to § 226 of the California Labor Code's legislative history, the statutory provision at issue in that case.  See 804 Fed. App'x. at 643.  The Ninth Circuit Court of Appeals found that the provision's objectives were to "provide workers with transparency about their compensation to protect them from being cheated of their earned wages and to facilitate their application, if needed, for unemployment benefits."  Id.  "These objectives are plainly substantive ones, directed at safeguarding employees' concrete interests rather than establishing procedural requirements as an end unto themselves."  Id.  Turning to the second factor, the court noted that the plaintiff only alleged "that her wage statements misstated one word of her employer's name, and that the alleged inaccuracy caused her confusion.  But apart from her confusion, Mays does not allege any real-world consequences flowing, or even potentially flowing, from the violation."  Id.  The Court found that the plaintiff failed "to satisfy Article III's injury-in-fact requirement" and remanded to the district court with instructions to dismiss the wage-statement claim without prejudice.  Id. at 644.  In contrast, in Magadia, the court held that the plaintiff sufficiently alleged that the defendant's § 226(a) violations, which deprived the plaintiff of accurate itemized wage statements, presented a material risk of harm to his interest in the statutorily guaranteed information because "without the mandated information, employees could not tell from their wage statements how the company calculated their wages or which dates the paystub covered—precisely the sort of "'real harm[ ]' that § 226(a) is 'designed to prevent.'"  999 F.3d at 679-80 (9th Cir. 2021) (citing Robins v. Spokeo, Inc., 867 F.3d 1108, 1116 (9th Cir. 2007)).

Second Circuit courts are split "as to whether allegations of a WTPA violation—without any allegations of injury—are sufficient to confer Article III standing."  Cartagena v. Sixth Ave. West Assoc. LLC, No. 23 Civ. 3611, 2023 WL 6318170, at *2 (S.D.N.Y. Sept. 28, 2023).  In

Cartagena, the plaintiff brought claims under the NYLL and the FLSA, and alleged that the defendant also violated the WTPA by failing to provide the plaintiff "with a wage notice at the time of hiring as required under NYLL § 195(1) or a wage statement for each pay period as required under NYLL § 195(3)." Cartagena, 2023 WL 6318170, at *1. Because the plaintiff's complaint did not state whether "he suffered any injury because of these statutory violations," id., the district court looked at whether the plaintiff could have "standing to bring a WTPA claim even absent specific allegations of injury." Id. at *2. The court stated that while some Second Circuit courts found that a plaintiff could have Article III standing without demonstrating a specific injury, "[o]ther courts have come to the opposite conclusion as to whether bare assertions of a WTPA violation suffice." Id.; see Neor v. Acacia Network, Inc., No. 22 Civ. 4814 (ER), 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (finding that "[b]ecause Plaintiffs have not alleged facts of a plausible harm that would grant them Article III standing, they have not met their burden"); but see Lipstein v. 20X Hospitality LLC, No. 22 Civ. 04812 (JLR) (JW), 2023 WL 6124048, at *10-11 (S.D.N.Y. Sept. 19, 2023) (holding that "[t]he burden lies with a plaintiff to demonstrate standing" and although discovery may later reveal "that the allegedly insufficient wage statements and notices did not actually hinder Plaintiff and others from raising issues regarding underpayment," at this juncture the plaintiff had sufficiently alleged standing under Article III). Citing to TransUnion, the Cartagena Court held that in order "to bring a wage notice or wage statement claim, the plaintiff must allege injury stemming from the statutory violation . . . . [T]he Court will not infer that a WTPA violation caused concrete injury simply because the plaintiff alleged violations of the NYLL and the FLSA in the same complaint. Rather, as always, a plaintiff 'must clearly allege facts demonstrating each element' of standing." Cartagena, 2023 WL 6318170, at *2 (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

Here, Plaintiffs must satisfy the three elements of Article III standing in order to bring a claim of alleged violations of the WTPA.  Plaintiff must thus show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Calcano, 36 F.4th at 74.  As for the first element, the existence of a concrete, particularized and actual or imminent injury, and applying the first factor of the Ninth Circuit's two-step approach, this Court finds that the WTPA was established to protect Plaintiffs' "concrete interests" as opposed to purely procedural rights.  Mays, 804 Fed. App'x. at 643.  "The WTPA's sponsors justified the legislation on the basis that 'a large number of employees are earning less than minimum wage and others are being paid less than their correct wage.'"  Copper v. Cavalry Staffing, LLC, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (citing N.Y. Sponsors. Memo., 2010 S.B. 8380, 233rd Leg., 2010 Reg. Sess. (N.Y. 2010)).  "The legislators were concerned that '[m]any employees are also not all receiving the appropriate amount of overtime compensation and many employers are failing to adequately inform their employees of their wages and how they are calculated in a language they can comprehend.'  In an effort to combat these abuses, the WTPA was drafted to 'dramatically' increase the penalties against employers 'in order to far better protect workers' rights and interests.'"  Id. (citing N.Y. Sponsors. Memo., 2010 S.B. 8380 (2010)); see Short v. Churchill Ben. Corp., 14 Civ. 4561 (MKB), 2016 WL 8711349, at *20 (E.D.N.Y. Apr. 8, 2016) ("In enacting the WTPA, New York State sought to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately.") (internal citations & quotation marks omitted).  As to the second factor of the Ninth Circuit's test, whether the specific procedural violations alleged in this case create actual harm or present a material risk of harm to such interests, this Court finds that Plaintiffs

14

have not alleged facts to demonstrate that they suffered specific injuries from Defendants' alleged violations on the WTPA.  See Neor, 2023 WL 1797267, at *4.  Although Plaintiffs allege that Defendants refused to provide them with "written notice of their regular rate of pay or overtime rate of pay in violation of New York Labor Law § 195.1 and the Wage Theft Prevention Act" and with "accurate paystubs and W-2s as required by state and federal law," FAC ¶¶ 142-43, Plaintiffs "fail to demonstrate how the lack of accurate wage notices and statements led to either a 'tangible injury or something akin to a traditional cause of action.'" Neor, 2023 WL 1797267, at *4 (citing Francisco v. NY Tex Care, Inc., No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022)).

Because Plaintiffs failed to show that they suffered a concrete and particularized injury from Defendants' alleged violation of the WTPA, the Court finds that it need not look at the other Article III standing elements, which both rely on the existence of an actual injury.  See Dominguez, 613 F. Supp. 3d at 753.  It may be that Plaintiffs can identify a particularized injury but simply have not done so here.  Although Plaintiffs have filed multiple complaints with the chance to correct this error, given that this standing analysis is an evolving area of the law, the Court respectfully recommends that leave to replead be granted.  Accordingly, this Court respectfully recommends that Count III of Plaintiffs' FAC be dismissed with leave to replead.

### D.  Count IV Of Plaintiffs' Fourth Amended Complaint Should Be Dismissed With Leave To Replead

Plaintiffs allege that Defendants willfully violated Plaintiffs' and the Rule 23 Class members' rights by failing to follow the frequency-of-pay requirements pursuant to Sections 191 and 198 of the NYLL.  FAC ¶ 177.  In their Motion to Dismiss, Defendants argue that Plaintiffs "fail to adequately allege facts to support Count IV of their Complaint for violations of the NYLL's pay frequency provisions."  ECF No. 64 at 9.  According to Defendants, "Plaintiffs'

FAC does not come close to alleging that Plaintiffs are 'manual workers' entitled to receive weekly pay under the NYLL.  The Complaint simply alleges that 'each Plaintiff was employed by Defendants as either a 'driver' or a 'helper,' and that each Plaintiff was paid bi-weekly.'"  Id. at 10.  In their Memorandum in Opposition, Plaintiffs claim that "the pay frequency claim under the NYLL is not a claim requiring pleading with particularity."  ECF No. 66 at 15 (emphasis in original).  In their Reply, Defendants argue that Plaintiffs fail to provide any description of what their positions are driver and helper entailed.  ECF No. 67 at 8.  The Reply states that "drivers presumably spend a significant portion of their time driving, but Plaintiffs offer no factual allegations regarding any other tasks performed by drivers, and the act of driving alone has been found not to be manual labor requiring weekly pay under the NYLL.  The job title of 'helper' provides no facts at all from which an inference can be drawn supporting a finding of manual work, as it is unclear what these employees are 'helping' with."  Id.

NYLL § 191(1)(a) requires employers to pay manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned," unless the Commissioner of the New York Department of Labor ("NYDOL") has authorized the employer to pay the worker less frequently.  See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC, 22 Civ. 6415 (FPG), 2023 WL 4457911, at *5 (W.D.N.Y. July 11, 2023).  In order to determine whether an employee is a manual worker, the NYDOL generally looks at the duties performed by the employee and makes a case-by-case determination based on the frequency of the employee's physical duties.  See Balderramo v. Go N.Y. Tours Inc., 15 Civ. 2326, 2023 WL 2751039, at *11 (S.D.N.Y. Mar. 31, 2023); see N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009).  Courts in the Second Circuit tend to look at how much of a plaintiff's workday is typically spent performing duties that can constitute physical labor.  See, e.g., Pozo v.

16

BlueMercury, Inc., No. 22 Civ. 7382 (VEC), 2023 WL 4980217, at *5 (S.D.N.Y. Aug. 3, 2023) (looking at the amount of time plaintiff's workday was spent performing physical labor, as opposed to selling merchandise); Balderramo, 2023 WL 2751039, at *14 (finding that bus drivers were not manual workers because most of their time is spent driving, as opposed to airport chauffeurs who load and unload luggage and spend time washing and refueling the vehicle).

Plaintiffs' FAC states that they worked as drivers and helpers throughout their employment for Defendants. See FAC ¶¶ 72, 78, 87, 93, 102, 105, 108, 111, 114, 117, 123, 132, 155. Plaintiffs also allege that they "spent more than 25% of their working time performing physical labor, as drivers and helpers making deliveries for Defendants." ECF No. 66 at 15. Plaintiffs rely on the nature of their employment as drivers and helpers to claim that they were entitled to benefit from the frequency of pay requirements pursuant to NYLL §§ 191 and 198 and that due to Defendants' alleged NYLL violations, "Plaintiffs and the Rule 23 Class members are entitled to recover liquidated damages." FAC ¶¶ 177-78.

This Court finds that Plaintiffs did not provide any description of the nature of their work as drivers and helpers that could sufficiently allege that Plaintiffs were manual workers under the NYLL. "Accepting that 25% of Plaintiff's job responsibilities consist of certain tasks does not allow the Court plausibly to infer that Plaintiff performed those tasks for twenty-five percent of his working time." Pozo, 2023 WL 4980217, at *5. As this Court cannot reasonably conclude that Plaintiffs have alleged sufficient facts to show that they were manual workers under the NYLL based on the FAC, this Court finds that Plaintiffs have not pleaded a claim under NYLL § 191(1)(a). See Balderramo, 2023 WL 2751039, at *14. Accordingly, this Court respectfully recommends that Defendants' motion to dismiss be granted as to Count IV of Plaintiffs' FAC on

the frequency of pay under the NYLL with leave to replead.  See FAC ¶¶ 175-78.  The Court would not be inclined to recommend leave to replead given the multiple complaints already filed, except that the Court believes leave to replead should be granted as to the Count IV claim so that a new pleading will be filed if the District Court agrees.

### E.  Count V Of Plaintiffs' Fourth Amended Complaint Should Not Be Dismissed

Plaintiffs allege that they are entitled to punitive damages as a result of Defendants' violation DCL §§ 273-76, as amended by the UVTA.  See N.Y. Debt. & Cred. Law §§ 273-76; FAC ¶¶ 179-95.  In support of their claim that "Defendants are jointly and severally liable to Plaintiffs" under the DCL, FAC ¶ 195, Plaintiffs allege, inter alia, that "[a]fter becoming aware of this lawsuit, Defendants transferred some or all of their business and assets from Top Food and Dong Feng to Xing Da and Zhenhao in March 2022."  FAC ¶ 18.  "Defendant Xuexiang Wu was involved in the fraudulent conveyance by forming Xing Da."  Id. ¶ 36.  "On March 17, 2022, to facilitate Defendants' fraudulent scheme, Defendant Lanfang Wu formed Zhenhao in less than one month after Defendants were served the original Complaint."  Id. ¶ 183. "[I]ndividual defendants, including Xuexiang Wu, Lanfang Wu, Qiao Chen, Songde Chen, and Huisu Chen, who owned and controlled the old entities . . .  became owners of the new entities Xing Da and Zhenhao that were formed to fraudulently take over old entities Top Food and Dong Feng's business[.]"  ECF No. 66 at 18.  "In order to escape liability under the labor laws, after forming the new business entities, Defendants fraudulently transferred business and assets from Top Food and Dong Feng to Xing Da and Zhenhao, without fair consideration, thereby rendering Top Food and Dong Feng insolvent."  Id. ¶ 186.  "Xing Da and Zhenhao took over all of Top Food and Dong Feng's customers, employees, management team, business incomes, and inventory, and conducted the same line of business at the same location.  After the

aforementioned transfer, Top Food and Dong Feng ceased to operate Defendants' business."  Id. ¶ 190.

In their motion to dismiss, Defendants contend that Plaintiffs' allegations under the UVTA are "plainly inadequate under established pleading standards."  ECF No. 64 at 10. "Further, to the extent Plaintiffs allege actual, rather than constructive, fraud on the part of Defendants, their allegations must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b)." Id.  Defendants also claim that "[w]hile Plaintiffs may point to a handful of allegations that collectively allege that 'Defendants' engaged in fraudulent conduct, these allegations are not only also conclusory, but they fail to provide a basis for drawing any inference or conclusion about any Defendant's individual conduct, and therefore cannot serve as a means of attaching liability to any particular Defendant."  Id. at 13.

The DCL, as amended by the UVTA, addresses (1) actual fraudulent transfers and (2) constructive fraudulent transfers.  See DCL §§ 273(a)(1), (2); Chen v. Thai Greenleaf Restaurant Corp., 21 Civ. 01382 (MKB) (JMW), 2022 WL 18859065, at *5 (E.D.N.Y. Dec. 13, 2022). Claims of actual fraud must be pleaded under the same standards required to plead fraud or mistake under Rule 9(b).  See Chen, 2022 WL 18859065, at *5.  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  DCL § 273(b) enumerates several factors to which "consideration may be given" in "determining actual intent."[3]  DCL § 273(b).  "In a claim for intentional fraudulent transfer, the

---

[3] These factors include whether "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the

Trustee must plead the fraudulent intent of the <u>transferor</u>, not the transferee, to defraud creditors." <u>In re Nanobeak Biotech Inc.</u>, 656 B.R. 350, 362-63 (S.D.N.Y. 2024) (internal citations & quotation marks omitted) (emphasis in original).  As for constructive fraud, the DCL "states that a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration' . . . and one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275."  <u>In re Eight-115 Assoc., LLC</u>, 650 B.R. 43, 55 (Bankr. S.D.N.Y. 2023) (citing <u>In re Sharp Int'l Corp.</u>, 403 F.3d 43, 53 (2d Cir. 2005)); <u>see In re Nanobeak Biotech Inc.</u>, 656 B.R. at 362-63.

"The first necessary element of any constructive fraudulent transfer claim is lack of fair consideration." <u>Id.</u> at 363.  Second Circuit courts have held that fair consideration "requires both (1) fair equivalency of the consideration and (2) good faith by both parties."  <u>In re Eight-115 Assoc.</u>, 650 B.R. at 55 (holding that "the plaintiff need only plead either a lack of fair equivalency or a lack of good faith on the part of the transferee to defeat a motion to dismiss.") More recently, the Bankruptcy Court in <u>In re Nanobeak Biotech Inc.</u> found that fair consideration requires three elements: "(1) the transferee must convey property in exchange for the transfer, or the transfer must discharge an antecedent debt; (2) what the transferee exchanges for the transfer

---

asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor."  DCL § 273(b).

must be of 'fair equivalent' value to the property transferred by the debtor; and (3) the transferee must make the exchange in 'good faith.'"  656 B.R. at 363 (citing In re Sharp Int'l Corp., 403 F.3d at 53-54) (emphasis in original).  In Saadeh v. Kagan, the district court held that despite an ongoing "tension" around the question of whether the good faith requirement under DCL § 272 operates in the context of a fraudulent conveyance claim under DCL § 273, "[c]ourts still regard the good faith of both the transferor and the transferee as an indispensable component of fair consideration."  20 Civ. 01945 (PAE) (SN), 2021 WL 5827942, at *5 (S.D.N.Y. Oct 20, 2021) (internal citations & quotation marks omitted).  "[G]ood faith is, to some extent, measured against the value of consideration exchanged, and so generally, if the value paid is a fair equivalent to the value of the property conveyed, the statutory requirement of good faith is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme."  Id. (internal citations & quotation marks omitted).

"Where a plaintiff meets its burden of showing that the transfer is made without consideration, there exists 'a presumption of insolvency that shifts the burden to the defendant to rebut by showing continued solvency after the transaction.'"  Id. at *7 (citing Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011)).  "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets . . . . A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent.  The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence."  DCL § 271(a), (b).  At the motion-to-dismiss stage, factual allegations from which the court may reasonably infer that a debtor was insolvent or undercapitalized as of the dates of the transfers is sufficient to show

insolency.  See In re Gilad, No. 1-20 Cv. -43233 (JMM), 2023 WL 5740203, at *11 (E.D.N.Y. Sept. 3, 2023).  "Furthermore, where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant—lumping all the defendants together fails to satisfy the particularity requirement."  In re Eight-115 Assoc., 650 B.R. at 56.

"Unlike fraudulent conveyance under federal law, there is an open question regarding whether the intent of the transferee is relevant when determining whether the transfer was fraudulent under the N.Y. D.C.L."  In re 45 John Lofts, LLC, 650 B.R. 602, 612 n.12 (Bankr. S.D.N.Y. 2023) (finding that "[t]o the extent there is an open question . . . the 'better view' is that only the intent of the transferor is relevant.");  see In re Direct Access Partners, LLC, 602 B.R. 495, 539 (Bankr. S.D.N.Y. 2019) (holding that "[t]here is some difference of opinion in the case law as to whether a claim of 'actual' fraudulent transfer under New York law requires proof of fraudulent intent on the part of the transferee as well as the transferor, but the better view is that the 'intent' that is relevant is only the intent of the transferor, not the transferee"); In re Nanobeak Biotech Inc., 656 B.R. 350, 365-66 ("[i]n a claim for intentional fraudulent transfer, the Trustee must plead the fraudulent intent of the transferor, not the transferee, to defraud creditors; 'mutual fraudulent intent is not necessary'") (citing In re Dreier LLP, 452 B.R. 391, 441 (Bankr. S.D.N.Y. 2011)).  Yet, "the overwhelming majority of courts" have held that "a defendant may be held liable for damages if they are either a 'transferee' or a 'beneficiary'" of the conveyance.  U.S. v. Lax, 414 F. Supp. 3d 359, 366 (E.D.N.Y. 2019) (citing Cadle Co. v. Newhouse, 74 Fed. App'x. 152, 153 (2d Cir. 2003)) (emphasis in original).  In U.S. v. Lax, the district court found that, as the owner of the transferee corporations, the individual defendant was, "[b]y any meaning of the word" a "beneficiary" of the corporations' fraudulent transfers

and thus liable for the fraudulent conveyance.  Id. at 366-67.

### 1.  Xing Da and Zhenhao

Plaintiffs claim that "Defendants were aware of the labor law claims of its numerous employees and former employees when they were served with the original Complaint.  As a result, Defendants, including [Corporate Defendants] . . . , conspired together to set up multiple entities for the purpose of defrauding their employees and former employees who have labor law claims against Defendants.  Defendants are therefore alter-egos of each other, thereby making each jointly and severally liable to Plaintiffs for the damages that Plaintiffs have suffered."  FAC ¶¶ 50-52.

The Court finds that these factual allegations sufficiently demonstrate actual and constructive fraudulent conveyance claims against Corporate Defendants Xing Da and Zhenhao. As for Plaintiffs' actual fraudulent conveyance claim, Xing Da and Zhenhao are beneficiaries of the alleged fraudulent transfer in that they both "took over all of Top Food and Dong Feng's customers, employees, management team, business incomes, and inventory, and conducted the same line of business at the same location.  After the aforementioned transfer, Top Food and Dong Feng ceased to operate Defendants' business."  Id. ¶ 190.  As for constructive fraud, Plaintiffs allege that the transfer occurred without fair consideration.  See ¶ 186.  As this Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party at the motion to dismiss stage, see Lundy, 711 F.3d at 113, the Court finds that Plaintiffs' FAC sufficiently demonstrate actual and constructive fraudulent conveyance claims against Xing Da and Zhenhao at this stage.

2.   **Xuexiang Wu and Lanfang Wu**

Plaintiffs claim that "Xuexiang Wu was involved in the fraudulent conveyance by forming Xing Da" less than a month after Defendants were served with the original Complaint. ECF No. 53 ¶¶ 36, 182.  Plaintiffs also claim that "[o]n March 17, 2022, to facilitate Defendants' fraudulent scheme, Defendant Lanfang Wu formed Zhenhao in less than one month after Defendants were served the original Complaint."  FAC ¶ 183.

Xuexiang Wu and Lanfang Wu partly owned and controlled Top Food and Dong Feng and became owners of Xing Da and Zhenhao, which were "formed to fraudulently take over old entities business."  ECF No. 66 at 18.  According to Plaintiffs, Xuexiang Wu "fraudulently transferred business and assets from Top Food and Dong Feng to Xing Da and Zhenhao, without fair consideration, thereby rendering Top Food and Dong Feng insolvent."  Id. ¶ 186.  This transfer included "at least substantially all of" Top Food and Dong Feng's assets."  Id. ¶ 188. Xuexiang Wu and Lanfang Wu are owners of Xing Da and Zhenhao.  Id. ¶¶ 46-47.

The Court finds that these factual allegations sufficiently demonstrate actual and constructive fraudulent conveyance claims against Xuexiang Wu and Lanfang Wu at this stage. As for Plaintiffs' actual fraudulent conveyance claim, Xuexiang Wu and Lanfang Wu assisted in the fraudulent transfer of which they became beneficiaries as owners of Xing Da and Zhenhao. The transfer occurred shortly after Plaintiffs filed a complaint against Xuexiang Wu and Lanfang Wu, included a substantial amount of Top Food and Dong Feng's assets and rendered Top Food and Dong Feng insolvent.  As for constructive fraud, Plaintiffs allege that the transfer occurred without fair consideration.  See id. ¶ 186.  As this Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party at the motion to dismiss stage, see Lundy, 711 F.3d at 113, the Court finds that Plaintiffs' FAC

sufficiently demonstrate actual and constructive fraudulent conveyance claims against Xuexiang Wu and Lanfang Wu at this stage.

### 3. Jian Xu, Qiao Chen, Songde Chen And Huisu Chen

Plaintiffs claim that "Defendant Jian Xu formed Dong Feng Trucking Inc," FAC ¶ 23, and that "[i]n order to escape liability under the labor laws, after forming the new business entities, Defendants fraudulently transferred business and assets from Top Food and Dong Feng to Xing Da and Zhenhao in secret, without fair consideration, thereby rendering Top Food and Dong Feng insolvent.  All of the individual defendants conspired together to engage in the aforementioned fraudulent transfer." Id. ¶ 186-87.  "The same group of management personnel continue to control Defendants' business after the transfer under the names of Zhenhao and Xing Da." Id. ¶ 191.

The Court finds that these factual allegations sufficiently demonstrate actual and constructive fraudulent conveyance claims against Jian Xu, Qiao Chen, Songde Chen and Huisu Chen at this stage.  These four Individual Defendants are transferees of the transfer of Top Food and Dong Feng's assets to Xing Da and Zhenhao.  As discussed above, the transfer occurred shortly after Plaintiffs filed a complaint against Defendants, included a substantial amount of Top Food and Dong Feng's assets, rendered Top Food and Dong Feng insolvent and occurred without fair consideration.  As this Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party at the motion to dismiss stage, see Lundy, 711 F.3d at 113, the Court finds that Plaintiffs' FAC sufficiently demonstrate actual and constructive fraudulent conveyance claims against Jian Xu, Qiao Chen, Songde Chen and Huisu Chen at this stage.

Accordingly, the Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' fraudulent conveyance claims be denied.

## III.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends:

1.   that Defendants' motion to dismiss be denied as to Counts I, II and V of Plaintiffs' Fourth Amended Complaint; and

2.   that Defendants' motion to dismiss be granted with leave to replead as to Counts III and IV of Plaintiffs' Fourth Amended Complaint.  Any revised pleading should be filed within fourteen (14) days of service of this report and recommendation, if adopted.  Any answer or pre motion letter must be filed within fourteen (14) days of Plaintiff's filing.

## IV.   OBJECTIONS

This report and recommendation will be filed electronically.  Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any request for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

If the District Court adopts this report and recommendation, within 14 days of the District Court's Order, the parties are directed to inform the Court by joint letter if they request a referral to Court-annexed mediation.  The parties are informed that the Court may decide to direct them to participate in trial-ready case mediation at an appropriate date.

Dated: Brooklyn, New York
   February 26, 2024

               *Vera M. Scanlon*
              VERA M. SCANLON
           United States Magistrate Judge